**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-01463-JLK-MDB

SCHOOL DISTRICT 49,
COLORADO SPRINGS SCHOOL DISTRICT 11,
ACADEMY SCHOOL DISTRICT 20,
EDUCATION REENVISIONED BOCES,
MONUMENT ACADEMY,
JAMES IRWIN CHARTER SCHOOLS,
MONTEZUMA CORTEZ SCHOOL DISTRICT, AND
THE CLASSICAL ACADEMY,

     *Plaintiffs*,

vs.

AUBREY SULLIVAN, Director of the Colorado Civil Rights Division, in her official
capacity;
SERGIO RAUDEL CORDOVA,
GETA ASFAW,
MAYUKO FIEWEGER,
DANIEL S. WARD,
JADE ROSE KELLY, AND
ERIC ARTIS, as members of the Colorado Civil Rights Commission, in their official
capacities;
PHILLIP WEISER, Colorado Attorney General, in his official capacity;
COLORADO HIGH SCHOOL ACTIVITIES ASSOCIATION;
MICHAEL KRUEGER, in his capacity as Commissioner of the Colorado High
School Activities Association;
RYAN WEST,
TY GRAY,
JOE BROWN,
SARA CRAWFORD,
CAMERON WRIGHT,
JEFF HOLLWAY,
JIM FLANIGAN,
JIMMY PORTER,
ELIZABETH JAMESON,
ALFIE LOTRICH,
MIKE JOBMAN,
HEIDI VOEHRINGER,
SYBIL BOOKER, AND

KRISTIE DURAN, as members of the Colorado High School Activities Association
Board of Directors,

    *Defendants.*

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1. School District 49 ("District 49") serves more than 10,000 students in El Paso County, Colorado. It brings this action alongside the other plaintiffs to protect students' constitutional rights to equal protection and bodily privacy. District 49 provides sports programs to 1,695 student athletes (683 girls and 1,012 boys). Its schools are members of the Colorado High School Athletics Association ("CHSAA").

2. Colorado Springs School District 11 ("District 11") serves more than 22,000 students in El Paso County, Colorado and provides sports programs to 2182 student athletes, including 970 girls. Its schools are members of CHSAA.

3. Academy School District 20 ("District 20") serves more than 26,000 students in Colorado Springs, Colorado and provides sports programs to its students, including girls. Its schools are members of CHSAA.

4. Montezuma-Cortez School District ("Montezuma-Cortez") serves more than 2,000 students in Montezuma County, Colorado and provides sports programs to 289 student athletes, including 137 girls. Its schools are members of CHSAA.

5. Education reEnvisioned BOCES ("ERBOCES") is a Board of Cooperative Education, a state-authorized entity that provides brick-and-mortar schools, online schools, and homeschool enrichment programs to families across Colorado. At least

2

52 ERBOCES students participate in Colorado high school athletic programs. An unknown number of ERBOCES homeschool students participate in high school sports programs through their local school district. While ERBOCES itself is not a member of the Colorado High School Athletics Association, its students participate in CHSAA-governed sports.

6.      Monument Academy is a K-12 charter school in Monument, Colorado. The school serves more than 1,100 students and provides sports programs to 75 student athletes, including 37 girls. It is a member of CHSAA.

7.      The Classical Academy is a K-12 charter school serving more than 2,100 students. The school provides sports programs to approximately 430 student athletes, including approximately 201 girls. It is a member of CHSAA.

8.      James Irwin Charter Schools ("James Irwin") is a network of charter schools serving more than 2,200 students. The network provides sports programs to 293 students, including 161 girls. Its high school is a CHSAA member.

9.      The Plaintiffs have adopted policies classifying sports teams by biological sex and maintaining separate locker rooms and accommodations. Boys are not allowed to play on girls' sports teams and vice versa. Boys are not allowed in girls' locker or hotel rooms and vice versa.

10.     These policies are necessary to: (1) prevent sex discrimination by ensuring fair athletic competition for female students; (2) protect all students' Fourteenth Amendment privacy rights by maintaining separate changing facilities; and (3)

3

shield the Plaintiffs from liability under federal equal protection principles and Title IX.

11.    Yet the Colorado Anti-Discrimination Act (CADA) and Colorado High School Activities Association (CHSAA) bylaws place the Plaintiffs in an untenable position by prohibiting their policies. Compliance with these state requirements would force the Plaintiffs to violate students' constitutional rights and risk federal funding loss, while adherence to federal obligations exposes the Plaintiffs to state penalties including fines and athletic-program suspension.

12.    The Plaintiffs seek a declaratory judgment that CADA and CHSAA bylaws are unconstitutional insofar as they prohibit classification of sports teams by sex, and an injunction against their enforcement.

## JURISDICTION AND VENUE

13.    This action raises violations the Equal Protection Clause of the Fourteenth Amendment and therefore presents federal questions under the United States Constitution. 42 U.S.C. § 1983.

14.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

15.    This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201–02 and Federal Rule of Civil Procedure 57; the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

4

16.    Venue is proper because all events giving rise to the claim occurred in the District of Colorado and all Defendants reside in the District of Colorado. 28 U.S.C. § 1391(b)(1)–(2).

## IDENTIFICATION OF PARTIES

17.    Plaintiffs District 49, District 11, District 20, and Montezuma-Cortez are public school districts in the State of Colorado.

18.    Plaintiff ERBOCES is a Board of Cooperative Education in the State of Colorado.

19.    Plaintiffs Monument Academy and The Classical Academy are public charter schools in the State of Colorado.

20.    Plaintiff James Irwin is a network of charter schools that operates James Irwin High School, a public charter high school in the State of Colorado.

21.    Aubrey Sullivan, named in her official capacity, is the Director of the Colorado Civil Rights Division, Colo. Rev. Stat. § 24-34-302, as one with authority to enforce the law at issue, *see, e.g.*, Colo. Rev. Stat. §§ 24-34-302, 24-34-306.

22.    Commissioners Sergio Raudel Cordova, Geta Asfaw, Mayuko Fieweger, Daniel S. Ward, Jade Rose Kelly, and Eric Artis, as members of the Colorado Civil Rights Commission with authority to enforce the law at issue, *see, e.g.*, Colo. Rev. Stat. §§ 24-34-305, 24-34-306, 24-34-605, are named as defendants in their official capacities.

23.    The Colorado High School Activities Association ("CHSAA") is the governing body for high school activities in Colorado.

24.     CHSAA oversees sports and activities for 368 member high schools in Colorado.

25.     CHSAA describes itself as "the governing body of high school athletics and activities (esports, speech, student council and music) in the state since 1921."

26.     CHSAA is a state actor because "the nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298(2001). CHSAA is "an organization of public schools represented by their officials acting in their official capacity to provide an integral element of secondary public schooling." *Id*. at 299–300.

27.     According to CHSAA's bylaws, the CHSAA Board of Directors must be composed of the CHSAA Commissioner, the State Commissioner of Education or their appointee, the President of the Colorado Association of School Boards or their appointee, a current elected member of the Colorado State Legislature appointed by the CHSAA Board of Directors, two (one principal and one superintendent) representatives of the Colorado Association of School Executives (CASE), the President and ten members each representing the schools in a different geographic area of Colorado.

28.     The vast majority of CHSAA members are public schools.

29.     CHSAA is, according to its mission statement, "an integral component of the educational process" in Colorado.

6

30.    CHSAA and its staff regularly work with the Colorado State legislature to craft legislation regarding high school activities.

31.    Michael Krueger, is named as a defendant in his official capacity as the Commissioner of CHSAA with authority to enforce its bylaws.

32.    Ryan West, Ty Gray, Joe Brown, Sara Crawford, Cameron Wright, Jeff Hollway, Jim Flanigan, Jimmy Porter, Elizabeth Jameson, Alfie Lotrich, Mike Jobman, Heidi Voehringer, Sybil Booker, and Kristie Duran, are named as defendants in their official capacity as members of the Board of Directors of CHSAA with authority to enforce its bylaws.

33.    Colorado Attorney General Phillip Weiser, as one with authority to enforce the law at issue, *see, e.g.*, Colo. Rev. Stat. § 24-34-306, is named as a defendant in his official capacity.

34.    All Defendants reside in the District of Colorado.

## STATEMENT OF FACTS

### The School Districts

35.    Plaintiffs District 49, District 11, District 20, and Montezuma-Cortez are Colorado public school districts organized under the School District Organization Act of 1992 or one of its predecessors. *See* Colo. Rev. Stat. § 22-30-101 *et seq*.

36.    As public school districts, District 49, District 11, District 20, and Montezuma-Cortez are bodies corporate with the powers to hold property, sue and be sued, and be a party to contracts. Colo. Rev. Stat. § 22-32-101 ("Corporate status of school districts").

7

37.    Plaintiffs Monument Academy and The Classical Academy are Colorado

charter schools organized under the Charter Schools Act. Colo. Rev. Stat. § 22-30.5-

101 *et seq*.

38.    Plaintiff James Irwin Charter Schools is a charter school network as defined

by Colo. Rev. Stat. § 22-30.5-104.7 and organized under the Charter Schools Act.

Colo. Rev. Stat. § 22-30.5-101 *et seq*.

### The Plaintiffs' Sports Policies

39.    On May 8, 2025, District 49 voted to adopt a policy that classifies its sports

teams by biological sex.

40.    The policy requires that every sports team be designated as either "female,

women, or girls" or as "male, men, or boys." It prohibits biological males from

competing on girls' teams and prohibits biological females from competing on boys'

teams.

41.    The policy also forbids boys from sharing locker or hotel rooms with girls and

prohibits girls from sharing locker or hotel rooms with boys.

42.    District 49 adopted this policy both to preserve athletic opportunities and

benefits for girls and to provide bodily privacy to all student-athletes. Because the

Plaintiffs acknowledge that boys and girls are distinct and that their self-evident

distinctions must be accommodated in the context of athletic competition—and in

the interest of fairness—District 49's policy also excludes girls from boys' sports.

43.    The policy reads, in full:

    (a)    The Board of Education hereby finds

8

(1)   There are inherent differences between men and women, meaning biological males and biological females;

(2)   These differences are not a valid justification for broad generalizations or discrimination that perpetuates the legal, social, or economic inferiority of either sex, but these differences do mean that the sexes are not similarly situated in all circumstances;

(3)   In situations where the sexes are not similar situated, valid sex-based classifications can help preserve the dignity, safety, and opportunities of each sex;

(4)   Men and women are not similarly situated in the context of sports or competition involving athletic ability or contact—men are born with significant inherent advantages that, while they do not guarantee the victory of any given man over any given woman, give most men a substantial competitive advantage over most women;

(5)   This competitive advantage is significant enough that men would substantially displace women if permitted to compete against them;

(6)   Schools across the country and in Colorado are ignoring this reality and allowing men and boys to compete against women and girls. This is demeaning, unfair, and dangerous to women and girls, and denies women and girls the equal opportunity to participate and excel in competitive sports;

9

(7)   Because sports teams often share private facilities like locker and hotel rooms, this also endangers women and girls and deprives them of privacy;

(8)   Allowing men to compete in women's sports is part of a broader attempt to debase the entire category of "woman" and transform laws intended to protect sex-based opportunities into laws that hurt women by undermining their identity, are inherently unfair, and denigrating their rights;

(9)   Classification of sports team participation by biological sex is therefore necessary to preserve and promote equal opportunity for District 49's female athletes, maintain opportunities for them to demonstrate their strength, skills, and athletic abilities, and to provide them with opportunities to obtain recognition and accolades, college scholarships, and other long-term benefits that result from participating and competing in athletic endeavors;

(10)  Such classification is further necessary to protect female athlete's right to safety and privacy. Women should not be forced to allow biological men into their private spaces as a condition of participating in athletic competition;

(11)  Moreover, the President of the United States announced in Executive Order 14201 (February 5, 2025) that "it is the policy of the United States to rescind all funds from educational programs that deprive women and girls of fair athletic opportunities, which results in the endangerment, humiliation, and silencing of

10

women and girls and deprives them of privacy. It shall also be the policy of the United States to oppose male competitive participation in women's sports more broadly, as a matter of safety, fairness, dignity, and truth." District 49 is therefore obligated by Title IX to classify its sports teams by biological sex.

(b) "Biological sex" means an individual's physical form as a male or female based solely on the individual's reproductive biology and genetics at birth. "Female" means an individual whose biological sex determined at birth is female. As used herein, "women" or "girls" refers to biological females. "Male" means an individual whose biological sex determined at birth is male. As used herein, "men" or "boys" refers to biological males.

(c) The School District's interscholastic athletic teams or sports shall be designated as one of the following based on biological sex:

   (1) Male, men, or boys;

   (2) Female, women, or girls; or

   (3) Coed, mixed, or open

(d) Teams

   (1) Athletic teams or sports designated as female, women, or girls shall not be open to participation by biologically male students

   (2) Athletic teams or sports designated as male, men, or boys shall not be open to participation by biologically female students

(e) Locker Rooms

11

(1) No biological male student shall enter or be present in a locker room being used by an athletic team or sport designated as female, women, or girls

(2) No biological female student shall enter or be present in a locker room being used by an athletic team or sport designated as male, men, or boys

(f) Hotels

(1) No biological male student shall be lodged in a hotel room or similar accommodation being used by an athletic team or sport designated as female, women, or girls

(2) No biological female student shall be lodged in a hotel room or similar accommodation being used by an athletic team or sport designated as male, men, or boys

44.    After District 49 adopted its policy, the other Plaintiffs adopted materially identical policies.

45.    On May 13, 2025, ERBOCES adopted a policy designating its sports teams by biological sex and mandating separate locker rooms and hotels for male and female students. *See* Ex. A.

46.    On June 4, 2025 James Irwin adopted a policy identical to that adopted by District 49.

47.    On June 11, 2025, District 11 adopted a policy designating its sports teams by biological sex and mandating separate locker rooms and hotels for male and female students. *See* Ex. B.

12

48.     On June 12, 2025, Monument Academy adopted a policy identical to that adopted by District 49.

49.     On June 20, 2025, District 20 adopted a policy directing its staff to implement a policy designating its sports teams by biological sex and mandating separate locker rooms and hotels for male and female students. This policy will also govern the sports teams, locker rooms, and hotel rooms for The Classical Academy. *See* Ex. C.

50.     On June 24, 2025, Montezuma-Cortez adopted a policy identical to that adopted by District 49.

### The Plaintiffs' Policies Preserves Athletic Opportunity for Girls

51.     One of the reasons for the Plaintiffs' policies, as stated by the policies themselves, is to preserve athletic opportunities for female students in light of the substantial natural athletic advantage possessed by male students.

52.     Biological differences between boys and girls mean that the average boy will have a competitive advantage over the average girl and that boys would threaten to meaningfully displace girls in athletic competition if allowed to compete against them.

53.     The competitive advantages possessed by boys are well documented and supported by scientific evidence.

54.     Depending on the sport, the performance gap between elite male athletes and elite female athletes is 10–50%. Hilton, E.N., Lundberg, T.R., "Transgender Women

13

in the Female Category of Sport: Perspectives on Testosterone Suppression and
Performance Advantage," *Sports Medicine* (2021) 51:199-214, p. 199.

55.    The gap is similar among untrained men and women and school age children.
*Id* at 204.

56.    After puberty, men have, on average, a skeletal muscle mass that is 12
kilograms greater than women of the same age and weight. Handelsman, D.J.,
Hirschberg, A.L., Bermon, S., "Circulating Testosterone as the Hormonal Basis of
Sex Differences in Athletic Performance," *Endocr. Rev.* 2018 Oct; 39(5): 812. This
results in women having upper limb strength that is only 50% to 60% of men's and
leg strength that is 60% to 80% of men's. *Id.*

57.    At 17 years of age, the average boy can throw a ball farther than 99% of girls.
The average 17-year-old boy can punch with a force more than two-and-half-times
greater than the average 17-year-old girl. Hilton, E.N., Lundberg, T.R, *supra* ¶ 54.

58.    Indeed, high-school-aged men are capable of outcompeting even elite female
athletes in many events. The junior male records in the 100 meter, 800 meter, 1500
meter, long jump, and discus throw all surpass the women's world record in those
events. *Id.* at 204, Table 3.

59.    These performances were not isolated occurrences; one study examining
recorded times for boys and women found that boys beat women's track and field
world records hundreds of times in a given year. Jeff Wald, Doriane Lambelet
Coleman, Wickliffe Shreve & Richard Clark, *Comparing the Best Elite Females to*

*Boys and Men: Personal Bests for 3 Female Gold Medalists Versus 2017 Performances by Boys and Men*, Duke Ctr. For Sports L. & Pol'y (2018).

60.    The inherent biological advantages of men are well documented in other studies and broadly acknowledged by the scientific and athletic communities.

61.    By excluding boys from girls' sports, the Plaintiffs' policies preserve athletic opportunities for female students. Allowing boys to compete alongside girls would reduce the opportunity for girls to receive awards, advance to the highest level of competition, or otherwise obtain the benefits of winning.

62.    Despite giving excellent performances, girls who compete against boys in athletic competition may be defeated for no reason other than biological disadvantage inherent to their sex.

63.    This would deprive the Plaintiffs' female students of opportunities to demonstrate their strength, skills, and athletic abilities; diminish their ability to compete for college scholarships; and otherwise reduce long-term benefits they could receive from participating and competing in athletic endeavor.

64.    By putting in place policies that prevents boys from competing against girls, the Plaintiffs are preserving these opportunities and benefits for their female students.

65.    The Plaintiffs are aware that an alternative policy—one that allows boys to compete against girls—would result in girls losing important athletic opportunities and benefits that they would otherwise have.

**The Plaintiffs' Policies Keep Students Safe and Preserve their Privacy**

15

66.     In addition to classifying sports teams by biological sex, the Plaintiffs' polices prohibit boys from using girls' locker rooms and vice versa. They also forbid boys from being lodged in a hotel room occupied by a female athlete and vice versa.

67.     These policies keep the Plaintiffs' students safe and preserve their privacy.

68.     A policy that allowed boys in girls' locker and hotel rooms or vice versa would deprive students of privacy by forcing them to change and sleep alongside students of the other sex.

69.     Locker and hotel rooms are private places where boys and girls should be able to expect privacy. The presence of members of the other sex in those places makes them less private and potentially exposes students' bodies against their will.

70.     All people, especially minors, can have a valid interest in concealing their body from members of the opposite sex that is unlike their interest in concealing their bodies from members of the same sex. This interest in bodily privacy from members of the opposite sex is greater than the interest in bodily privacy from members of the same sex and deserves greater protection.

71.     Because of the exposure and vulnerability caused by undress and sleeping, allowing members of the other sex into those could also pose a danger to students.

72.     In sporting leagues that have used policies that force the sexes to share locker rooms, there are documented instances of biological males walking into girls' locker rooms while female athletes are "were fully naked or in a state of substantial undress, revealing their bodies and private parts to [the male competitor] and subjecting [the women] to distress, shame, humiliation and embarrassment."

16

Complaint at 123, *Gaines v. NCAA, et al.*, No. 1:24-cv-01109-MHC (N.D. Ga. Oct. 23, 2024).

73.    The Plaintiffs' locker room and hotel policies are meant to prevent this kind of distress, shame, humiliation, and embarrassment.

## The Equal Protection Clause and Title IX Require that the District Preserve Athletic Opportunities and Privacy for Girls

74.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits discrimination on the basis of sex.

75.    Knowingly depriving female students of athletic opportunities and benefits on the basis of their sex would constitute unconstitutional sex discrimination under the Equal Protection Clause.

76.    Scientific evidence shows that upsetting the historical status quo and forcing girls to compete against boys would deprive them of athletic opportunities and benefits because of their sex.

77.    Therefore, the Plaintiffs cannot implement a policy allowing boys to complete alongside girls because such a policy would deprive girls of athletic opportunities and benefits based solely on their biological sex in violation of the Equal Protection Clause.

78.    The Fourteenth Amendment also requires the Plaintiffs to provide students with sex-segregated lockers rooms. The Fourteenth Amendment creates a constitutionally protected privacy interest in bodily privacy, especially with respect to children. Forcing a person to share intimate facilities or otherwise involuntarily exposing their body violates this right.

17

79.     The Fourteenth Amendment thus mandates that schools and other government facilities provide separate locker and hotel rooms for female and male students.

80.     Similarly, Title IX of the Educational Amendments Act prohibits the Plaintiffs from excluding any student from participation in sports on the basis of sex. 20 U.S.C. § 1681.

81.     Any educational institution that violates Title IX risks fines, investigation, and even losing its federal funding.

82.     Title IX mandates that schools classify their sports teams by biological sex because allowing boys to compete in girls' sports "den[ies] women an equal opportunity to participate in sports." Sec. 1, Exec. Order No. 14201, 90 C.F.R. § 9279 (2025). Furthermore, "it is the policy of the United States to rescind all funds from educational programs that deprive women and girls of fair athletic opportunities, which results in the endangerment, humiliation, and silencing of women and girls and deprives them of privacy." *Id.*

83.     On March 19, 2025, the United States Department of Education announced that the Maine Department of Education violated Title IX by allowing boys to compete in girls' sports and allowing boys to use girls' intimate facilities. Upon making the announcement, the Acting Assistance Secretary for Civil Rights stated that if Maine did not change its policies, the Department of Education would "initiate the process to limit MDOE's access to federal funding." United States Department of Education, *U.S. Department of Education's Office for Civil Rights*

18

*Concludes that the Maine Department of Education Is Violating Title IX* (March 19, 2025) https://www.ed.gov/about/news/press-release/us-department-of-educations-office-civil-rights-concludes-maine-department-of-education-violating-title-ix.

84.     On March 3, 2025, the United States Department of Education announced an investigation into the Turnwater School District in Washington for Title IX violations. The suspected violations include permitting boys to play girls' sports. United States Department of Education, *Office for Civil Rights Launches Title IX Investigation into Washington State School District* (March 3, 2025) https://www.ed.gov/about/news/press-release/office-civil-rights-launches-title-ix-investigation-washington-state-school-district.

**Colorado Law Conflicts with the Equal Protection Clause and Title IX**

85.     In contravention of federal law, the Colorado Anti-Discrimination Act, as interpreted and applied by Defendants, prohibits the Plaintiffs from enforcing their policies. CADA, as interpreted and applied by Defendants, requires the Plaintiffs to allow boys to play girls' sports and requires them to allow boys and girls to share locker rooms. Two provisions of CADA prohibit enforcement of the Plaintiffs' policies as written.

86.     First, Colo. Rev. Stat. § 24-34-601(2)(a) prohibits an "educational institution" from denying "full and equal enjoyment of the "goods, services, facilities, privileges, advantages, or accommodations" of the educational institution "because of… sex… gender identity [or] gender expression."

87.     Second, the same statute bans:

19

> publish[ing], circulat[ing], issu[ing], display[ing], post[ing], or mail[ing] any written, electronic, or printed communication, notice, or advertisement any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of… sex…gender identity [or] gender expression….

88.    These sections, as interpreted by the Defendants in 3 Colo. Code Regs. § 708-1:81.9, require that the Plaintiffs "allow individuals the use of gender-segregated facilities that are consistent with their gender identity. Gender-segregated facilities include, but are not limited to, restrooms, locker rooms, dressing rooms, and dormitories."

89.    CADA, as interpreted by Defendants, also mandates that the Plaintiffs allow males who identify as girls to play on girls' sports teams. Sports are one of the "services… privileges, [or] advantages" that the Plaintiffs offer to their students. CADA compels schools to allow males to use gender-segregated "services… privileges, [or] advantages" that accord with their gender identity. Just as CADA requires allowing boys into girls' locker rooms, it also requires allowing boys into girls' sports teams.

90.    CHSAA, a state actor, has confirmed that Colorado law bans classifying sports teams by biological sex.

91.    On February 10, 2025, Michael Krueger, Commissioner of CHSAA, sent an email to all member schools informing them that, to the extent federal law prohibits boys from playing on girls' teams, there is a "direct conflict between federal directives and existing Colorado state law."

92.    CHSAA bylaws also prohibit enforcement of the Plaintiffs' policies. CHSAA bylaws 300.2 and 300.3 require that member schools allow students to play on a sports team that matches their gender identity, irrespective of biological sex.

93.    Violation of CADA carries serious costs and sanctions. Defendants can file charges of discrimination and investigate a District. This investigation can include issuing subpoenas, compelling mediation, and issuing cease-and-desist notices.

94.    CADA also authorizes suits against violators. A person found to have violated CADA is fined $3,500 for each violation. Colo. Rev. Stat. § 24-34-602(1)(a).

95.    Violation of CHSAA bylaws also carries steep penalties. CHSAA Bylaw 800.68 gives it the power to suspend any school that violates the organization's bylaw. Suspension would not only remove the Plaintiffs' ability to offer athletic programs to its high school students, it would also eliminate those students' ability to participate in school-sponsored athletics.

96.    Colorado law is inconsistent with the Equal Protection Clause and Title IX and would impose serious penalties the Plaintiffs for enforcing their policies—policies which are mandated by federal law.

**The Premise of CADA Erases Equal Protection for Girls**

21

97.    In addition to violating Equal Protection, CADA and the CHSAA bylaws represent an assault on the very categories of "girl" and "woman." These laws threaten to unravel decades of precedent forbidding sex-based discrimination.

98.    The battle for women's rights in the United States has a storied history. Centuries of hard-fought progress have resulted in meaningful strides toward equality for women under the law.

99.    Those strides were only possible because "women" existed as a distinct category of people in society and under the law.

100.    The Equal Protection Clause and the law developed thereunder treat "sex" as a binary biological reality. Every person (with narrow exceptions that do not inform the law as it applies in the vast majority of circumstances) is either a man or a woman and cannot change their sex.

101.    Consistent with this reality, legal rights for women in the United States have developed alongside an understanding that men and women are not precisely identical. In many circumstances, equal treatment for women and men does not mean identical treatment. There are times and places where women have a right to be separate from men or a right to be recognized as distinct from men.

102.    Indeed, women can wield their legal right to be free from discrimination only because they are a recognizable group distinct from men.

103.    Sex-based discrimination is actionable because a court can tell from a factual record whether a defendant is engaging in discrimination against a woman because she is not a man.

104. If a court can no longer make that determination—if "woman" ceases to be a coherent category—then sex-based discrimination law falls apart at the seams.

105. CADA, CHSAA, and those who want to fold "gender identity" into "sex" would erode the category of "women" to the point of collapse. If the only thing that separates a woman from a man is the choice to be a woman, neither category can bear any legal weight.

106. Not only would collapsing the categories in this way make it impossible to identify sex discrimination as it was historically understood, it would erase protections based on differences between the sexes. Women's sports, the right to bodily privacy, sex-segregated institutions; these are all premised in some respect on the idea that men and women are distinguishable by something more than personal fiat.

107. In this way, CADA and CHSAA are part of an effort to undermine Equal Protection for women as a legal concept. Separate and apart from the particular effect on the Plaintiffs' students, these laws represent an offense to Equal Protection for women at large.

108. This attempt to erase "woman" as a recognizable category not only deprives women of hard-won legal protections, it is discriminatory.

109. Women and men are, in reality, materially different and destroying the ability of courts and governments to recognize those differences harms women. CADA and the CHSAA bylaws sought to bring about this result when they were enacted and therefore discriminate against women.

**CAUSES OF ACTION**

110. The Plaintiffs' claims are brought as pre-enforcement challenges for violation of the Equal Protection clause under 42 U.S.C. § 1983.

111. The Plaintiffs' policies violates CADA and the CHSAA bylaws and the Plaintiffs have a credible fear that the State of Colorado and CHSAA will take enforcement action against it based on their policies.

112. Based on the pleadings in paragraphs 1–83 it is clear that the Plaintiffs' policies violate Colo. Rev. Stat. § 24-34-601(2)(a) and CHSAA bylaws 300.2 and 300.3.

113. Colorado and CHSAA have taken enforcement actions in the past based on similar violations, rendering the Plaintiffs' fear of enforcement credible.

114. Although Colorado Civil Rights Commission investigations and resolutions are generally confidential, Colorado has investigated at least one school for denying a biological male access to girls' facilities. *See* Determination, *Mathis v. Fountain-Fort Carson School District 8*, Case No. P20130034X (June 18, 2013).

115. Additionally, CHSAA has announced to all members that it believes Colorado State law requires that schools allow boys to participate in girls' sports and vice versa.

116. Moreover, because the Plaintiffs' policies announce an intent to violate CADA and the only thing required for a Colorado Civil Rights Commission investigation is a complaint, the Plaintiffs have a reasonable fear of imminent enforcement. *See 303 Creative LLC v. Elenis*, 6 F.4th 1160, 1173 (10th Cir. 2021), *rev'd on other grounds*, 600 U.S. 570 (2023).

117. Were the Plaintiffs to wait for enforcement, they would be subject to potentially harsh penalties. The Plaintiffs would also have to bear substantial cost before any

24

actual enforcement action. The Colorado Civil Rights Division has authority to issue subpoenas and compel mediation during its investigations. These costs would be borne by the Plaintiffs before any finding that they violated CADA.

**First Cause of Action:**
**Discrimination on the Basis of Sex in Relation to Athletic Opportunity and Benefit**
(Against all Defendants)

118.    Plaintiffs repeat and reallege each of the allegations contained in paragraph 1–97 of this Complaint.

119.    The Plaintiffs' policies are necessary to preserve athletic opportunities and benefits for female students.

120.    Without them, male students could choose to compete in girls' sports and, because of their significant biological advantage, could meaningfully displace girls in competition.

121.    Classifying sports by biological sex allows boys and girls to have the same opportunities to avail themselves of the many social, psychological, and physical benefits that come from athletic competition.

122.    To the extent CADA not only prohibits such a policy but requires an alternative one, it discriminates against girls on the basis of sex.

123.    Because of biological factors—rules of genetics beyond the control of any government, law, or person—permitting boys to compete against girls does not result in equal opportunity for both sexes.

124.    Instead, it results in unequal treatment for women. Boys are given more of the benefits of state-sponsored athletic competition than girls.

25

125.   The Plaintiffs and Defendants know that unequal treatment would result from allowing boys to compete in girls' sports.

126.   They also know that this denial would be the result of immutable differences between the sexes.

127.   CADA and CHSAA's policy discriminate against girls by knowingly destroying and undermining the category of "women" or "girl" as a distinct ontological and legally protected category of persons, including by forcing girls to compete against and accept boys into activities set aside for girl-only participation.

128.   They further discriminate against girls by knowingly and intentionally depriving them of the benefits of competitive sports and conveying those benefits on boys.

129.   Defendants thus enacted the policies at issue in order to disfavor girls and invidiously discriminate against them.

130.   To the extent CADA requires such unequal treatment, it therefore denies Equal Protection under the law to girls on the basis of their sex.

131.   Further, CADA and CHSAA ban schools from fielding sports teams whose membership is limited to only a single sex—it is illegal for a school to compose a team of exclusively girls or exclusively boys.

132.   Under CADA, a school that limits membership in a sports team to girls would be subject to investigation and fines because of the sex of the team members.

133.   Under CHSAA's bylaws, a team whose membership was limited to girls would be suspended from competition because of the sex of its team members.

134.    Under CADA, a school that limits membership in a sports team to boys would be subject to investigation and fines because of the sex of the team members.

135.    Under CHSAA's bylaws, a team whose membership was limited to boys would be suspended from competition because of the sex of its team members.

136.    It violates the Equal Protection Clause for CADA to investigate or fine a school because of the sex of the members of its sports teams.

137.    It violates the Equal Protection Clause for CHSAA to suspend a sports team or school because of the sex of the members of a sports team.

## Second Cause of Action
## Violation of Fourteenth Amendment Right to Bodily Privacy and Safety
(Against the Colorado Civil Rights Division and Attorney General Defendants)

138.    Plaintiffs repeat and reallege each of the allegations contained in paragraph 1–114 of this Complaint.

139.    The Plaintiffs' students have a constitutional right to bodily privacy and safety that is protected by the Fourteenth Amendment.

140.    The Plaintiffs' policies are necessary to preserve student bodily privacy and safety in locker rooms and hotel rooms. Allowing members of the opposite sex to share locker rooms and hotel rooms threatens the bodily privacy of minor children by potentially exposing their bodies to members of the opposite sex against their will

141.    The Fourteenth Amendment prohibits a school from forcing girls to share a locker room or hotel room with boys. Girls and boys have a fundamental right to bodily privacy that precludes the state from forcing them to share intimate spaces with members of the opposite sex.

27

142.     CADA violates the Fourteenth Amendment because it requires schools to violate this right to bodily privacy. Any school that bans boys from girls' locker rooms or vice versa is subject to investigation, fines, and injunction under CADA.

143.     CADA further violates the Fourteenth Amendment to the extent it prohibits the Plaintiffs from "publish[ing], circulat[ing], issu[ing], display[ing], post[ing]" notices that boys are not allowed in girls' locker rooms and vice versa "because of… sex."

## Third Cause of Action
## Discrimination on the Basis of Sex on Behalf of District 49 Students
(Against all Defendants)

144.     Plaintiffs repeat and reallege each of the allegations contained in paragraph 1–120 of this Complaint.

145.     Plaintiffs' female students have a constitutional right to Equal Protection under the United States Constitution.

146.     Plaintiffs have a close relationship with its students and is well-situated to vindicate their Equal Protection rights. It is the Plaintiffs' responsibility to educate students and provide them with important athletic opportunities. To the extent CADA and CHSAA infringe on students' Equal Protection rights, they do so by controlling the actions of the Plaintiffs.

147.     To the extent CADA requires that female students compete against male students in athletic competitions, it violates the female students' Equal Protection rights.

28

148. Classifying sports by biological sex allows boys and girls to have the same opportunities to avail themselves of the benefits that come from athletic competition.

149. Because of biological factors—rules of genetics beyond the control of any government, law, or person—permitting boys to compete against girls does not result in equal opportunity for both sexes.

150. Such treatment is deeply unequal. Boys are given more of the benefits of state-sponsored athletic competition than girls.

151. The Defendants know that this unequal treatment would result from allowing boys to compete in girls' sports. And that his denial would be the result of immutable differences between the sexes.

152. CADA and CHSAA's policy discriminate against girls by knowingly destroying and undermining the category of "women" or "girl" as a distinct ontological and legally protected category of persons, including by forcing girls to compete against and accept boys into activities set aside for girl-only participation. Defendants thus enacted the policies at issue in order to disfavor girls and invidiously discriminate against them.

153. They further discriminate against girls by knowingly and intentionally depriving them of the benefits of competitive sports and conveying those benefits on boys.

154. To the extent CADA requires such unequal treatment, it therefore denies Equal Protection under the law to girls on the basis of their sex.

**Fourth Cause of Action**
**Violation of Fourteenth Amendment Right to Bodily Privacy and Safety on Behalf of District 49 Students**
(Against the Colorado Civil Rights Division and Attorney General Defendants)

155.    Plaintiffs repeat and reallege each of the allegations contained in paragraph 1–128 of this Complaint.

156.    The Plaintiffs' students have a constitutional right to bodily privacy and safety that is protected by the Fourteenth Amendment.

157.    The Plaintiffs have a close relationship with their students and are well-situated to vindicate their constitutional rights. It is the Plaintiffs' responsibility to educate students and provide them with bodily privacy and safety. To the extent CADA and CHSAA infringe on students' Fourteenth Amendment rights, they do so by controlling the actions of the Plaintiffs.

158.    The Plaintiffs' policies are necessary to preserve student bodily privacy and safety in locker rooms and hotel rooms. Allowing members of the opposite sex to share locker rooms and hotel rooms threatens the bodily privacy of minor children by potentially exposing their bodies to members of the opposite sex against their will

159.    The Fourteenth Amendment prohibits a school from forcing girls to share a locker room or hotel room with boys. Girls and boys have a fundamental right to bodily privacy that precludes the state from forcing them to share intimate spaces with members of the opposite sex.

160.    CADA violates the Fourteenth Amendment because it requires girls and boys to share locker rooms. Any school that bans boys from girls' locker rooms or vice versa is subject to investigation, fines, and injunction under CADA.

161. This violates the students' right to conceal their body from members of the opposite sex and to have access to intimate spaces free of the opposite sex.

## PRAYER FOR RELIEF

Plaintiffs ask this Court to enter judgment against Defendants and to provide the following relief:

1. Declare that CADA, and any implementing regulation or guidance thereto, do not require the Plaintiffs to allow boys to play on girls athletic teams, girls to play on boys athletic teams, to open private spaces open to athletes of one sex to members of the opposite, or to house members of the opposite sex in travel accommodations for school sports because this Court finds that such an interpretation of CADA violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

2. Declare that CHSAA bylaws, and any implementing policies thereto, do not require the Plaintiffs to allow boys to play on girls athletic teams, girls to play on boys athletic teams, to open private spaces open to athletes of one sex to members of the opposite, or to house members of the opposite sex in travel accommodations for school sports because this Court finds that such an interpretation of CADA violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3. Issue a permanent injunction prohibiting Defendants, their divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from enforcing CADA or

31

the CHSAA bylaws to require the Plaintiffs to allow boys to play on girls' sports team, including by otherwise pursuing, charging, issuing, or assessing any penalties, fines, assessments, investigations, notice-of-right-to-sue letters, or other enforcement actions.

4.    Issue a permanent injunction prohibiting Defendants, their  divisions, bureaus, agents, officers, commissioners, employees, and anyone acting in concert or participation with them, including their successors in office, from enforcing CADA or the CHSAA bylaws to require the Plaintiffs to allow boys in girls' locker rooms or vice versa, including by otherwise pursuing, charging, issuing, or assessing any penalties, fines, assessments, investigations, notice-of-right-to-sue letters, or other enforcement actions.

5.    Award the Plaintiffs' costs and the expenses of this action, including reasonable attorneys' fees under 42 U.S.C. § 1988.

6.    Issue the requested injunctive relief without a condition of bond or other security being required of the Plaintiffs; and

7.    Grant any other relief that it deems equitable and just under the circumstances.

Respectfully submitted this 22nd day of July, 2025.

*s/ Michael Francisco*

Michael L. Francisco
James Compton
FIRST & FOURTEENTH PLLC
800 Connecticut Avenue, NW

32

Suite 300
Washington D.C. 20006
(202) 998-1978
michael@first-fourteenth.com
james@first-fourteenth.com

Christopher O. Murray
Julian R. Ellis, Jr.
Andrew Nussbaum
FIRST & FOURTEENTH PLLC
2 North Cascade Avenue
Suite 1430
Colorado Springs, CO 80903
(719) 428-4937
chris@first-fourteenth.com
julian@first-fourteenth.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on July 22, 2025, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF system, which will send notification of such filing to the following email addresses:

Dominick D. Schumacher
Michael B. McCracken
Nora Q. Passamaneck
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, CO 80203
(858) 386-6966
Dominick.schumacher@coag.gov
Blake.mccracken@coag.gov
Nora.passamaneck@coag.gov

*Attorneys for State Defendants*

Lane Towery
Colorado Attorney General
Ralph L. Carr Judicial Building
1300 Broadway
Denver, CO 80203
(720) 508-6470
Lane.towery@coag.gov
Talia B. Kraemer
Colorado Department of Law
1300 Broadway
Denver, CO 80203
(646) 342-9201
Talia.kraemer@coag.gov

*Attorneys for Defendant Phillip Weiser,
Colorado Attorney General*

Alexander Halpern
Alexander Halpern LLC
1345 Spruce St., 2nd Floor
Boulder, CO 80302
(303) 449-6180
Ahalpern@halpernllc.com

Ashlyn L. Hare
Hutchinson Black & Cook, LLC
921 Walnut St., Suite 200
Boulder, CO 80302
(719) 648-8150
Ashlyn.hare@hbcboulder.com

Lucy K. Walker
Hutchinson Black & Cook, LLC
921 Walnut St., Suite 200
Boulder, CO 80302
(303) 442-6514
Walker@hbcboulder.com

*Attorneys for CHSAA Defendants*

*/s/Kelly Callender*
First & Fourteenth PLLC

34