IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01463-JLK-MDB

SCHOOL DISTRICT 49, et al.,

Plaintiffs,

v.

AUBREY SULLIVAN, in her official capacity as Director of the Colorado Civil Rights Division, et al.,

Defendants.

## MOTION TO DISMISS AMENDED COMPLAINT

Defendants Colorado High School Activities Association ("CHSAA"), Michael Krueger, Ryan West, Ty Gray, Joe Brown, Sara Crawford, Cameron Wright, Jeff Hollway, Jim Flanigan, Jimmy Porter, Elizabeth Jameson, Alfie Lotrich, Mike Jobman, Heidi Voehringer, Sybil Booker, and Kristie Duran (together, the "CHSAA Defendants"), hereby move to dismiss the Amended Complaint filed by Plaintiffs School District 49, Colorado Springs School District 11, Academy School District 20, Education ReEnvisioned BOCES, Monument Academy, James Irwin Charter Schools, Montezuma Cortez School District, and The Classical Academy (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. Rule 12(b)(1) for lack of subject-matter jurisdiction based on lack of standing and ripeness and Fed. R. Civ. P. Rule 12(b)(6) for lack of prudential standing.[1]

---

[1] Pursuant to D.C.COLO.LCivR 7.1(b)(2), conferral is not required on a Rule 12 motion. In accordance with The Honorable Judge Kane's Pretrial and Trial Procedures – Civil Cases Memorandum revised March 2025, Section IV.M, the CHSAA Defendants do not believe the deficiencies in Plaintiffs' Amended Complaint are curable by amendment.

## INTRODUCTION

Plaintiff School District 49 commenced the present action with the filing of its Complaint for Declaratory and Injunctive Relief against the CHSAA Defendants as well as against the Colorado Civil Rights Division ("CCRD") and a number of state officials on May 9, 2025. ECF # 1. On July 15, 2025, Plaintiff School District 49 sought leave to amend its Complaint to add a number of additional plaintiffs. Plaintiffs' pleading alleges that the Colorado Anti-Discrimination Act ("CADA") and certain CHSAA rules "prohibit" the policies enacted and enforced by the Plaintiff school districts and related entities. ECF # 35, ¶ 11. As such, Plaintiffs seek judicial relief in the form of a judgment that CADA and certain related CHSAA rules are unconstitutional. ECF # 35, ¶ 12. Because the Amended Complaint alleges no sufficiently imminent injury, it fails on standing and ripeness grounds and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. In addition, because certain claims are alleged on behalf of nonparty, unidentified students, such claims also lack prudential standing and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

CHSAA is a Colorado nonprofit corporation and IRC section 501(c)(3) tax-exempt charitable membership organization. Declaration of Michael Krueger ("Krueger Decl."), attached hereto as Exhibit A, ¶¶ 2-3. CHSAA oversees high school athletics and other activities among its member high schools in Colorado. ECF # 35, ¶ 23; Krueger Decl., Exh. A, ¶ 2. Defendant Michael Krueger is the Commissioner and chief administrative officer of CHSAA. ECF #35, ¶ 31; Krueger Decl., Exh. A, ¶ 1. Membership in CHSAA is voluntary; of the 648 high schools in Colorado, 372 are CHSAA members. Krueger Decl., Exh. A, ¶¶ 4-5. Each member school annually signs a

resolution agreeing to the CHSAA Bylaws and acknowledging that membership in the association is voluntary. *Id*. ¶ 4.

As an interscholastic athletics and activities association, CHSAA promulgates rules and regulations through its Constitution and Bylaws. *Id.* ¶ 6. At issue in this case is Article 3 to the CHSAA Constitution, section 300, which was adopted in 2008 and recognizes the equality of rights afforded to Colorado high school students under CADA. *Id.* ¶ 9. The relevant provisions of Article 3, section 300 state:

> 300.2  Members shall ensure that all students have equal access and opportunities to participate in activities and athletics without unlawful discrimination based on disability, race, creed, color, gender identity, sexual orientation, religion, age, national origin, or ancestry.
>
> 300.3  The Colorado High School Activities Association recognizes the right of transgender student-athletes to participate in interscholastic activities free from unlawful discrimination based on sexual orientation and gender identification. To ensure appropriate gender assignment for purposes of athletic eligibility, a transgender student-athlete's home school will meet with the student to determine the gender assignment for the prospective student-athlete. The CHSAA will review athletic eligibility decisions based on gender assignment of transgender student-athletes in accordance with its approved policies and procedures.

*Id.* ¶ 10.[2]

Additionally, CHSAA's bylaws include specific sections addressing interscholastic teams composed of boys, girls and/or boys and girls as well as the member schools' roles in designating the type of team for each sport. Bylaw 2850.3 provides:

---

[2] It is appropriate to consider the text of the CHSAA Bylaws without converting the motion to a summary judgment motion because they are incorporated by reference in Plaintiffs' Amended Complaint and are essential to Plaintiffs' claims. *See* ECF # 35, ¶ 92; *U.S. Olympic Comm. v. Am. Media, Inc.*, 156 F. Supp. 2d 1200, 1204 (D. Colo. 2001) (citing *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999)) ("When a document is referred to in the complaint and is central to the plaintiff's claim, the court has discretion to consider the document as part of the pleadings.").

3

> Interscholastic sports teams composed of boys, girls, and/or boys and girls shall be conducted in accordance with the following Bylaws as noted and modified. Schools shall designate the type of team for each sport according to the following:
>
> > (a) BOYS' TEAM — Whenever the school provides only a team or teams for boys in a particular sport, girls are permitted to qualify for the boys' team(s).
> >
> > (b) SEPARATE TEAMS — Whenever the school provides a team or teams for boys and a team or teams for girls in the same sport, girls shall not be permitted to qualify for the boys' team(s) in that sport, nor shall boys be permitted to qualify for the girls' team(s) in that sport.
> >
> > (c) GIRLS' TEAMS — Whenever the school provides only a team or teams for girls in a particular sport, boys shall not be permitted to qualify for the girls' team in that sport.
> >
> > (d) COED TEAMS – Whenever the Association designates a coed team, that team must be composed of both boys and girls.

*Id.* ¶ 11. CHSAA does not define who is a "boy" or a "girl" or specify how a member school is to make that determination. *Id.* ¶ 12. Pursuant to Article 3, Section 300.3 of the CHSAA Constitution, that decision is for the member schools individually to decide. *Id.*

CHSAA has not adopted any bylaw requiring any school to allow transgender students to participate on any team consistent with their gender identity. *Id.* ¶ 14. Decisions regarding student participation, including participation by transgender students, are made at the local level by each member school in alignment with Colorado state law. *Id.* CHSAA has never evaluated, approved, denied, or otherwise issued any ruling on a decision made by a member school based on a student's gender or transgender status. *Id.* ¶ 15. CHSAA does not require, and has never required, a member school to submit any data about students' transgender status. *Id.* CHSAA is aware that multiple member schools have policies or practices that prohibit transgender participation in athletics. *Id.* ¶ 16. CHSAA has never penalized or disciplined a member school based on that school's policy or determination regarding transgender participation in athletic competition. *Id.* ¶ 18. CHSAA has no intention of penalizing or disciplining any member school, including without limitation any

4

member school within the Plaintiffs' school districts or organizations, based solely on that school district's or school's policy or determination regarding transgender student-athletes at its own school. *Id.* ¶ 20.

On May 8, 2025, Plaintiff School District 49 "voted to adopt a policy that classifies its sports teams by biological sex." ECF # 35, ¶ 39. Plaintiff School District 49's policy defines "biological sex" as "an individual's physical form as a male or female based solely on the individual's reproductive biology and genetics at birth." ECF # 35, ¶ 43(b). After Plaintiff School District 49 adopted its policy, "the other Plaintiffs adopted materially identical policies." ECF # 35, ¶ 44. It is these policies that give rise to the instant action. Notably, Plaintiffs do not allege that there are any transgender student-athletes in the state, let alone any transgender student-athletes in their own schools that their policies will apply to.[3]

Plaintiffs allege that their policies are required by the Equal Protection Clause and Title IX of the Education Amendments of 1972, ECF # 35, ¶¶ 74-85, but that CADA and CHSAA Bylaws prohibit such policies. ECF # 35, ¶¶ 86-96. Consequently, Plaintiffs bring two causes of action against the CHSAA Defendants for alleged violations of the Equal Protection Clause brought as pre-enforcement challenges under 42 U.S.C. § 1983. ECF # 35, ¶ 110. Plaintiffs' First Cause of Action alleges discrimination on the basis of sex in relation to athletic opportunity and benefits. ECF # 35, ¶¶ 118-137. Plaintiffs' Third Cause of Action similarly alleges discrimination on the basis of sex brought on behalf of Plaintiffs' students. ECF # 35, ¶¶ 144-154. Plaintiffs ask this Court to declare that CADA and the CHSAA bylaws violate the Equal Protection Clause and issue

---

[3] In fact, one School District 49 board member, Mike Heil, stated at the time the policy was adopted that there are no known transgender student-athletes in School District 49. Sch. Dist. 49 Bd. of Educ., *Hearing on Action Item 7.5: Proposed Policy JBA – Preserving Fairness and Safety in Sports*, at 2:10:18 (May 8, 2025), https://www.youtube.com/watch?v=AQK_fHEsT9o.

a permanent injunction prohibiting the Defendants from enforcing CADA or the CHSAA bylaws against the Plaintiffs.  ECF # 35, Prayer for Relief ¶¶ 1-4.

## ARGUMENT

I. **PLAINTIFFS' FIRST AND THIRD CAUSES OF ACTION SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1).**

   A. **Legal Standard**

Where a defendant seeks to dismiss the claims against it on standing and ripeness grounds, a reviewing court should consider the matter under Fed. R. Civ. P. 12(b)(1), as the court's subject matter jurisdiction is implicated.  *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995); *Sierra Club v. Young Life Campaign, Inc*., 176 F.Supp.2d 1070, 1083 (D. Colo. 2001).  A jurisdictional challenge under Rule 12(b)(1) may be either facial or factual. *See Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,* 363 F.3d 1072, 1074 (10th Cir. 2004).  In a facial challenge, the moving party asserts that the allegations in the complaint are insufficient to establish federal jurisdiction, and the court accepts a complaint's allegations as true.  *See Pueblo of Jemez v. United States,* 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).  In contrast, when reviewing a factual challenge, courts cannot "presume the truthfulness of the complaint's factual allegations," and therefore may consider documents outside the four corners of the complaint without converting the motion to dismiss into a motion for summary judgment.  *Equal Emp. Opportunity Comm'n v. 'Murica, LLC*, 694 F. Supp. 3d 1356, 1361 (D. Colo. 2023) (quoting *Pueblo of Jemez,* 790 F.3d at 1148 n.4).

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the court has jurisdiction under Article III of the Constitution to properly hear the case before it. Fed. R. Civ. P. 12(b)(1).  Because "federal courts are courts of limited jurisdiction," the court must have a

constitutional or statutory basis to exercise its jurisdiction. Fed. R. Civ. P. 12(b)(1); *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Atlas Biologicals, Inc. v. Kutrubes*, 50 F.4th 1307, 1317 (10th Cir. 2022) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Mere conclusory allegations of jurisdiction are insufficient. *Engl v. Nat. Grocers by Vitamin Cottage, Inc.*, 15-CV-02129-MSK-NYW, 2016 WL 8578096, at *4 (D. Colo. June 20, 2016), *report and recommendation adopted,* 15-CV-02129-MSK-NYW, 2016 WL 8578252 (D. Colo. Sept. 21, 2016).

### B. Plaintiffs' First and Third Causes of Action Should Be Dismissed for Lack of Article III Standing.

Plaintiffs' First and Third Causes of Action both allege potential damage to Plaintiffs based on their "credible fear that … CHSAA will take enforcement action against [them] based on their policies." ECF # 35 ¶ 111. This conclusory "credible fear" of hypothetical future damages resulting from a hypothetical future enforcement action does not amount to an injury in fact that is sufficient to confer standing under Article III of the Constitution.

The "irreducible constitutional minimum" of standing consists of three elements: (1) the plaintiff must have suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant and not the result of the independent action of some third party not before the court, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). What might constitute an "injury in fact" has been the subject of hefty legal analysis. In *Lujan*, the United States Supreme Court explained that the injury in fact

7

must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal citations removed).[4]

As to both Plaintiffs' First and Third Causes of Action, Plaintiffs have not suffered an injury in fact. Plaintiffs' claims are brought as "pre-enforcement challenges," alleging that Plaintiffs have a "credible fear" that CHSAA "will take enforcement action against [them] based on their policies." ECF # 35 ¶¶ 110, 111. Such fears of enforcement actions by CHSAA are far too speculative to meet the future injury standard to establish federal standing. When a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute," a court will find standing only if "there exists a credible threat of prosecution thereunder." *See 303 Creative LLC v. Elenis*, 6 F. 4th 1160 (10th Cir. 2021), *rev'd on other grounds*, 600 U.S. 570 (2023); *see also Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) ("The mere presence on the statute books of an unconstitutional statute, in the absence of enforcement or credible threat of enforcement, does not entitle anyone to sue, even if they allege an inhibiting effect on constitutionally protected conduct prohibited by the statute."). Generally, a credible threat will only be found "under circumstances that render the threatened enforcement sufficiently imminent." *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020) (citing

---

[4] Though Plaintiffs' First Cause of Action appears to assert a violation of the Plaintiffs' rights under the Equal Protection Clause, the CHSAA Defendants also dispute that Plaintiffs—comprised of public school districts and public charter schools—have any legally protected interest under the Equal Protection Clause. *See City of Trenton v. State of N.J.*, 262 U.S. 182, 188 (1923) (explaining that there is no "power, right, or property of a city of other political subdivision held to be protected by . . . the Fourteenth Amendment"); *Housing Authority of the Kaw Tribe of Indians v. City of Ponca City*, 952 F.2d 1183 (10th Cir. 1991) ("[U]nless expressly granted the ability by its creating state, a political subdivision cannot assert federal constitutional rights in opposition to state action."); *Nampa Classical Academy v. Goesling*, 714 F. Supp. 2d 1079 (D. Idaho 2010) ("[The schools'] officers . . . are not "persons" with enforceable rights under the federal constitution."); *Triplett v. Tiemann*, 302 F. Supp. 1239 (D. Neb. 1969) ("The plaintiff school districts are legally not subject to injury under the Equal Protection Clause.").

8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (hereinafter, "*SBA List*")). In *SBA List*, the Supreme Court set forth three factors for courts to consider when determining whether there is a credible threat of prosecution: 1) whether there is a history of past enforcement for the same conduct; 2) whether the authority to initiate enforcement is restricted to a prosecutor or agency, or is instead initiated by the filing of a complaint by any person; and 3) whether the defendant disavows future enforcement. 573 U.S. at 164-65.

Under these factors, there is no credible, sufficiently imminent threat that CHSAA will penalize the Plaintiffs. As an initial matter, Plaintiffs do not allege that there are any transgender student-athletes in the state that would trigger the application of Plaintiffs' policies. Moreover, Plaintiffs conclusorily assert that "Colorado and CHSAA have taken enforcement actions in the past based on similar violations, rendering the Plaintiffs' fear of enforcement credible." ECF # 35 ¶ 113. Yet Plaintiffs cite no specific instance of enforcement of *any* CHSAA bylaw, let alone the severe act of suspending a member school or school district for noncompliance with sections 300.2 and 300.3. On the contrary, CHSAA Commissioner Michael Krueger's declaration makes clear that CHSAA has never suspended a member school. Krueger Decl., Exh. A ¶ 17. Further, although CHSAA is and has been aware of a number of member schools within the organization that do not permit the participation in athletics by transgender students on teams aligning with their identified gender, since the adoption of section 300.3 to Article 3 in 2008, CHSAA has never penalized or disciplined a member school based on that school's policy or determination regarding transgender student-athletes at its own school. Krueger Decl., Exh. A ¶ 18. Plaintiffs' theory of injury would require an unprecedented change of course in CHSAA's interpretation and application of its Constitution and Bylaws in order to penalize them.

9

Moreover, enforcement of CHSAA's bylaws rests solely with CHSAA. Unlike in *303 Creative*, where the plaintiff alleged a credible threat of investigation by the Colorado Civil Rights Division ("CCRD") under CADA, which is triggered by the filing of a complaint by anyone alleging discrimination, there is no third-party complaint process under CHSAA's bylaws that would trigger an investigation or penalties. *See* 6 F.4th at 1174.

Similarly, the law is clear that a pre-enforcement challenge lacks merit where the enforcing entity has made clear that they have no intention to enforce the challenged law or regulation. *See Winsness v. Yocom*, 433 F.3d 727, 729, 732 (10th Cir. 2006); *D.L.S. v. Utah*, 374 F.3d 971, 975 (10th Cir. 2004). Though the CHSAA bylaws are not statutes and Defendant Krueger is not a prosecutor, the same circumstances apply. To the extent that Plaintiffs' pre-enforcement challenge hinges on an expectation that CHSAA will suspend them for their internal policies, such an action would be unprecedented in CHSAA's history and in fact, CHSAA has expressly disavowed any present intention to do so. Krueger Decl, Exh. A ¶ 20.

### C.  Plaintiffs' First and Third Causes of Action Should Be Dismissed As Unripe.

The doctrine of ripeness requires concrete legal issues presented in actual cases, not in abstractions, for a claim to be justiciable under Article III. *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019). A claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (internal quotations omitted). The ripeness inquiry "focuses not on whether the plaintiff was in fact harmed, but rather whether the harm asserted has matured sufficiently to warrant judicial intervention." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004). Thus, the "[r]ipeness doctrine addresses a *timing* question: *when* in time is it appropriate for a court to take up the asserted claim." *ACORN v. City of Tulsa, Okla.*, 835 F.2d

735, 738 (10th Cir.1987) (emphasis in original) (quoting *Action Alliance of Sr. Citizens v. Heckler*, 789 F.2d 931, 940 (D.C.Cir.1986)).

In determining whether an issue is ripe for adjudication, courts are guided by a two-factor test which considers both "the fitness of the issue for judicial resolution" and "the hardship to the parties of withholding judicial consideration." *Sierra Club v. Yeutter*, 911 F.2d 1405, 1415-16 (10th Cir. 1990); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). In pre-enforcement challenges, "standing and ripeness often 'boil down to the same question.'" *303 Creative*, 6 F.4th at 1176 (quoting *SBA List*, 573 U.S. at 157 n. 5). Accordingly, if a threatened injury is not sufficiently imminent to establish standing, the claim is likewise not ripe. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 907 (10th Cir. 2012).

Applying the ripeness test to Plaintiffs' claims in the present action makes clear that the claims are not ripe. With regard to the first prong, whether the claim is fit for judicial resolution, the harm expressed by Plaintiffs rests on the contingent circumstance of a transgender student-athlete playing in the state on the team that aligns with their gender identity:

- "To the extent CADA requires that female students compete against male students in athletic competitions, it violates the female students' Equal Protection rights." ECF 35, ¶¶ 122, 147.
- "… unequal treatment would result from allowing boys to compete in girls' sports." ECF 35, ¶¶ 125, 151.
- "CADA and CHSAA's policy discriminate against girls by knowingly destroying and undermining the category of "women" or "girl" as a distinct ontological and legally protected category of persons, including by forcing girls to compete against and accept boys into activities set aside for girl-only participation." ECF 35, ¶¶ 127, 152.

To the extent that Plaintiffs' First and Third Causes of Action are premised on a transgender girl playing for (or against) a girls' team in one of Plaintiffs' schools or districts, Plaintiffs can point to no such athlete and no such team. CHSAA is aware of no transgender high school athlete at *any*

11

member school. Krueger Decl., Exh. A, ¶ 13. It is far from certain that there ever will be one, or, if there is, that the athlete will want to play on a team consistent with their gender identity for or against a high school interscholastic team in a member school within a Plaintiff school district or organization. Certainly, Plaintiffs have not alleged as much in the Complaint. Because the ripeness requirement is not met where a claim depends on "uncertain and contingent events," Plaintiffs have not met their burden to show that the issue is fit for judicial resolution. *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1275 (10th Cir. 2012).

With respect to the second factor, withholding judicial determination will not lead to any undue hardship. There are no allegations that any transgender athletes exist at the high school competitive level within a CHSAA member school, much less a member school within any of the Plaintiffs' schools or any CHSAA member school that may compete against any of the Plaintiffs' schools. Therefore, any policy of CHSAA cannot be said to create an immediate dilemma for Plaintiffs. *Gonzales*, 64 F.3d at 1500. Accordingly, because Plaintiffs' claims are contingent on future speculative events and Plaintiffs face no harm or hardship in any judicial delay, the claims raised are not fit for judicial resolution, and absent a live, concrete controversy, this Court lacks jurisdiction to consider such claims.

## II.   PLAINTIFFS' THIRD CAUSE OF ACTION SHOULD BE DISMISSED WITH PREJUDICE PURSUANT TO RULE 12(B)(6).

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[5] *Mobley v. McCormick,* 40

---

[5] Because this Court cannot consider evidence outside the four corners of a complaint without converting the motion to a motion for summary judgment, the Court should not consider the Declaration of Michael Krueger in its evaluation of the CHSAA Defendants' Rule 12(b)(6) argument.

12

F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines,* 671 F.3d 1188, 1190 (10th Cir. 2012). The court "disregard[s] conclusory statements and look[s] only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* at 1191. "The mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

A motion to dismiss a claim for lack of prudential standing is appropriately brought under Rule 12(b)(6) instead of Rule 12(b)(1) because prudential standing does not concern this Court's subject matter jurisdiction under Article III. *See VR Acquisitions, LLC v. Wasatch Cnty.*, 853 F.3d 1142, 1146 n. 4 (10th Cir. 2017); *see also Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (analyzing prudential standing on a Rule 12(b)(6) motion).

### B. Plaintiffs' Third Cause of Action Should Be Dismissed Because Plaintiffs' Lack Prudential Standing.

Plaintiffs' Third Cause of Action alleges discrimination on the basis of sex under the Equal Protection Clause on behalf of Plaintiffs' students. Plaintiffs allege they have standing to bring constitutional claims on behalf of their students because they have "a close relationship with [their] students and [are] well-situated to vindicate their Equal Protection rights." ECF # 35, ¶ 146. However, a high bar exists for litigants seeking standing to advocate for the rights of a nonparty, and Plaintiffs' conclusory statement regarding their "close relationship" fails under applicable tests addressing prudential standing.

13

In addition to Article III's standing requirements, plaintiffs must demonstrate prudential standing, which represents "judicially self-imposed limits on the exercise of federal jurisdiction" that are "founded in concern about the proper—and properly limited—role of the courts in a democratic society." *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020) (citing *Bennett v. Spear*, 520 U.S. 154 (1997)). Essential to prudential standing is the general rule that a party "must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *United States v. Harrington*, 719 F. Supp. 3d 1171, 1179 (D. Colo. 2024). As the Supreme Court has noted, "third parties themselves usually will be the best proponents of their own rights," and it "may be that in fact the holders of those rights . . . do not wish to assert them." *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). Courts have recognized a narrow exception to this bar on nonparty advocacy, where a plaintiff may bring a suit on behalf of a third party only if "the party asserting the right has a close relationship with the person who possesses the right [and] there is a hindrance to the possessor's ability to protect his own interests."[6] *Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)); *see also Frank v. Lee*, 84 F.4th 1119, 1150 (10th Cir. 2023).

Plaintiffs do not, and cannot, meet their burden to establish third party standing. As an initial matter, there is no evidence that students in all or any of the Plaintiff school districts wish to assert their own Equal Protection Clause claims, or that they even support Plaintiffs' policies. *See Singleton*, 428 U.S. at 114. In fact, the possibility of the opposite situation alone negates the third-party standing Plaintiffs here assert. Plaintiffs' Amended Complaint outlines certain

---

[6] A party must meet this high burden to bring a claim on behalf of a third party, even if the party bringing the claim has suffered, or will suffer, a cognizable injury in its own right. *Hill*, 947 F.3d at 1309 (quoting *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1170 (10th Cir. 2011)); *see also VR Acquisitions*, 853 F.3d at 1147 (finding that plaintiff did not have prudential standing despite the threat of government enforcement against the plaintiff).

14

Case No. 1:25-cv-01463-JLK-MDB    Document 37    filed 08/08/25    USDC Colorado
pg 15 of 17

restrictions that Plaintiffs seek to impose against transgender student athletes within their districts. ECF # 35, ¶¶ 39-50.  However, if there were any transgender student-athletes attending the Plaintiffs' schools, a conclusion which the CHSAA Defendants dispute, these policies would require the Plaintiffs to actively advocate *against* their own transgender students.  Such a conflict necessarily disqualifies Plaintiffs' claim.  *See, e.g.*, *Stanley v. Darlington Cnty. Sch. Dist.*, 84 F.3d 707, 715-16 (4th Cir. 1996) (explaining the conflict of interest inherent in a school district bringing a claim on behalf of a class of students with divergent interests).

More critical to the third-party test at hand, however, is that there is no hindrance to the students' ability to protect their own interests.  As the Sixth Circuit has recognized, prudential standing cannot be met where there is "no indication … that the students or their parents face any obstacle in litigating their rights themselves."  *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208-09 (6th Cir. 2011); *see also Friends of Trumbull v. Chi. Bd. of Educ.*, 123 F. Supp. 3d 990, 998-99 (N.D. Ill. 2015); *Pocono Mountain Charter School v. Pocono Mountain Sch. Dist.*, 908 F. Supp. 2d 597, 616-17 (M.D. Pa. 2012).  Indeed, numerous minor students have brought effectively the same claims as Plaintiffs in other courts challenging trans-inclusion policies or, conversely, trans-exclusion policies.  *See, e.g.*, *Magalengo v. Pa. Interscholastic Athletic Ass'n, Inc.*, No. 25-325, 2025 WL 2200916 (E.D. Pa. Aug. 1, 2025); Complaint, *Castaneda v. Or. Dep't of Educ.*, No. 3:25-cv-01170 (D. Or. July 7, 2025), ECF #1; *Soule v. Conn. Ass'n of Schs.*, 755 F. Supp. 3d 172 (D. Conn. 2024); *Hecox v. Little*, 104 F.4th 1061 (9th Cir. 2024); *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024); *Tirrell v. Edelblut*, 747 F. Supp. 3d 310 (D.N.H. 2024). Thus, the parties best situated to assert an Equal Protection Clause challenge on behalf of the students are the students themselves.

## **CONCLUSION**

For the foregoing reasons, the CHSAA Defendants respectfully request this Court dismiss Plaintiffs' First and Third Causes of Action for lack of subject matter jurisdiction. Additionally, the CHSAA Defendants request this Court dismiss Plaintiffs' Third Cause of Action with prejudice pursuant to Rule 12(b)(6) for lack of prudential standing.

Respectfully submitted this 8th day of August, 2025.

*s/ Ashlyn L. Hare*
Ashlyn L. Hare
Lucy K. Walker
Hutchinson Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
ashlyn.hare@hbcboulder.com
lucy.walker@hbcboulder.com

Alexander Halpern
Alexander Halpern, LLC
1345 Spruce Street, 2nd Floor
Boulder, CO 80302
(303) 449-6180
ahalpern@halpernllc.com

*Counsel for Defendant Colorado High School Activities Association, Michael Krueger, Ryan West, Ty Gray, Joe Brown, Sara Crawford, Cameron Wright, Jeff Hollway, Jim Flanigan, Jimmy Porter, Elizabeth Jameson, Alfie Lotrich, Mike Jobman, Heidi Voehringer, Sybil Booker, and Kristie Duran*

## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

Pursuant to Judge Kane's Pretrial and Trial Procedures – Civil Cases Memorandum revised March 2025, Section IV.B, counsel certifies that no part of this Motion was prepared using GenAI.

*s/ Ashlyn L. Hare*
Ashlyn L. Hare